**In re Ignatius D'ANNA, Debtor.**

**Bankruptcy No. 94–11329SR.**

United States Bankruptcy Court,
E.D. Pennsylvania.

Jan. 26, 1995.

Marcy C. Panzer, Cozen and O'Connor, Philadelphia, PA.

Kathleen E. Torbitt, Adelman, Lavin, Gold & Levin, P.C., Philadelphia, PA.

William J. Levant, Lesser & Kaplan, P.C., Blue Bell, PA.

John D. Maida, Norristown, PA.

Kevin Callahan, U.S. Trustee's Office, Philadelphia, PA.

## *OPINION*

STEPHEN RASLAVICH, Bankruptcy Judge.

This matter is before the Court upon the Objection of St. Edmond's Savings and Loan Association ("the Association") to the Application of John D. Maida Associates ("Maida") for Allowance of Interim Compensation and Reimbursement of Expenses ("the Application"). A hearing was held on July 18, 1994, after which the Association filed a memorandum of law in support of its position.

### Facts

The relevant facts are, for the most part, not in dispute. As of the petition date, March 11, 1994, the Debtor owned approximately 19 rent-producing properties. The Association held 14 separate mortgages, 13 first mortgages and 1 second mortgage, granted by the Debtor. On or about April 26, 1994, the Association sold to and assigned all of its right, title and interest in eleven of those first mortgages to Berkeley Federal Bank & Trust ("Berkeley"), retaining its rights under two first mortgages and one second mortgage. Each of the 14 mortgages contains an "assignment of rents" clause, and was properly recorded pre-petition in the Department of Records for the City of Philadelphia.

The Debtor was in default under each of the mortgages. The Association had given notice of those defaults to the Debtor and his counsel. The Debtor failed to cure the defaults despite prolonged discussions between the Association, the Debtor and his counsel to reach acceptable terms for a reinstatement of the mortgage obligations.

In its memorandum of law, the Association maintained that prior to the petition date, it caused written demand to be served on the tenants of the mortgaged premises to pay directly to the Association all rents due under the terms of their respective leases ("the

rent demand notices"). The Association did not indicate, however, specifically when the rent demand notices were issued. The date when the rent demand notices were sent, as well as the extent of that mailing, are facts which remain in dispute.

Maida filed the Application on June 8, 1994, to which the Association, as well as Berkeley and Meridian Bank, filed an objection. The Application, the Debtor's schedules and Maida's Amended Statement disclose pre-petition retainers to Maida totalling $18,025, including $10,025 as Debtor's bankruptcy counsel and $8,000 for tax work. Maida's Amended Statement pursuant to Rule 2016(b) of the Federal Rules of Bankruptcy Procedure, disclosed that the source of the retainers was the Debtor's rental income, and the source of payments to be made for any unpaid services is also to be the Debtor's rental income.

The Association's position is that the retainer paid to Debtor's counsel is cash collateral and subject to the Association's perfected lien and security interest, which arose upon the filing of their mortgages, and as such, was not properly tendered to Debtor's counsel for a retainer, is not properly available as a fund from which Debtor's counsel's fees may be paid, and should be disgorged by Debtor's counsel and paid to the Association. Essentially, the Association maintains that Debtor's counsel may not receive any interest in the rents greater than that which the Debtor had to convey, which the Association maintains is an interest in "rents"[1] subject to its security interest.

## Discussion

The Court must first determine what body of law should be applied to determine the nature and scope of a mortgagee's "unenforced" security interest in pre-petition rents arising under an assignment of rents clause within a mortgage, which have been collected by a debtor and paid to that debtor's bankruptcy attorney as and for a retainer, in the context of the mortgagor-assignor's bankruptcy. The Association, relying on cases construing the cash collateral provisions of the Bankruptcy Code, contends that where a mortgagee has properly recorded its mortgages, which contain an assignment of rents clause, collected rental proceeds, which are paid to the Debtor's attorney as a retainer without the mortgagee's consent, are cash collateral subject to that mortgagee's perfected lien and security interest.

Since the Association objects to the payment of the Debtor's attorneys fees from the retainer, whether or not the rents from which that retainer originated are "cash collateral" is significant, because under section 363(c)(2), "[a debtor in possession] may not use ... cash collateral ... unless—(A) each entity that has an interest in such cash collateral consents; or (B) the court, after notice and hearing, authorizes such use ... in accordance with the provisions of this section." 11 U.S.C. § 363(c)(2). The starting point in an analysis of whether rents received are cash collateral is section 363(a) of the Bankruptcy Code, which provides in pertinent part:

> ... "cash collateral" means cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest *and includes the ... rents ... of property subject to a security interest as provided in section 552(b) of this title,* whether existing before or after the commencement of a case under this title.

11 U.S.C. § 363(a) (emphasis added).

Under section 363(a), rents received from mortgaged property, either before or after a bankruptcy filing would be cash collateral to the extent they are subject to a lien under section 552(b), which provides in pertinent part:

> ... if the debtor and an entity entered into a security agreement before the commencement of the case and if the *security interest* created by such *security agreement* extends to *property* of the debtor acquired before the commencement of the case and to ... *rents* ... of such property, then such security interest extends to such ... rents ... acquired by the estate after

---

1. As discussed *infra,* the term "rents" refers to both collected rents, which in the instant case are the source of the retainer, and unaccrued rents—a property's future rental income stream.

the commencement of the case to the extent provided by such security agreement and by applicable nonbankruptcy law. . . .

11 U.S.C. § 552(b) (emphasis added).

■■■ A "security interest" is defined for bankruptcy purposes as a "lien created by an agreement." 11 U.S.C. § 101(51). A "security agreement" is an "agreement that creates or provides for a security interest." *Id.*, § 101(50). "Lien" is broadly defined as a "charge against or interest in property to secure payment of a debt or performance of an obligation." *Id.*, § 101(37). The Debtor has not argued that the underlying mortgages held by the Association are invalid, nor is there any outstanding question as to the validity of the assignments of rents.[2] Accordingly, under the Bankruptcy Code, the Association has a valid and enforceable lien (and security interest) on the mortgaged premises and the rents derived from that property.

In *Butner v. United States,* 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979), the Supreme Court squarely addressed the question of whether state or federal law should govern the assignment of rents in the context of a mortgagor's bankruptcy under the Bankruptcy Act of 1898. The Court held that state law should apply, stating that "the federal bankruptcy court should take whatever steps are necessary to ensure that the mortgagee is afforded in federal bankruptcy the same protection he would have under state law if no bankruptcy had ensued." *Butner,* 440 U.S. at 56, 99 S.Ct. at 918, 59 L.Ed.2d at 142. The holding of Butner remains valid under the Bankruptcy Code of 1978. *See Nobelman v. American Sav. Bank,* —— U.S. ——, ——, 113 S.Ct. 2106, 2108, 124 L.Ed.2d

228 (1993). Accordingly, the specific question presented by the instant case is whether under Pennsylvania law the Association's lien on the rents derived from the mortgaged property, which the Association did not "enforce" pre-petition, extends to the rental proceeds which were collected by the Debtor and paid to his bankruptcy counsel as a retainer pre-petition; and, if so, whether that interest is superior to the interest of the Debtor, from which the Debtor's attorney's interest in the retainer originates, at the time the Debtor paid over the rental moneys to his bankruptcy attorney.

■■ While failing to mention the distinction drawn by the courts in *Commerce Bank v. Mountain View Village, Inc.,* 5 F.3d 34 (3d Cir.1993) and *J.H. Streiker & Co., Inc. v. SeSide Co., Ltd. (In re SeSide Co., Ltd.),* 152 B.R. 878 (E.D.Pa.1993), between the concepts of "perfection" and "enforcement," the Association relies on those decisions, and their progeny, asserting that "it is virtually axiomatic that under Pennsylvania law a mortgagee's lien on and security interest in rents attaches and is perfected upon recordation of the mortgage containing that interest." *See* Association's Memorandum of Law at 11–12. The Association's assertion is correct, however, the issue is the not whether the Association has a valid lien/security interest in the rents pursuant to its assignment of rents. The issue is what rights to rents emanate from the Association's lien.

■■ The Court finds, for reasons discussed below, that under Pennsylvania law the recording of a mortgage containing an assignment of rents clause "give[s] the mortgagee an effective security interest in 'rents' *as a type of collateral as opposed to a securi-*

---

**2.** Even though significant litigation has already been completed in this case, including the Association and Berkeley's successful attempt to gain *relief from the automatic stay and a subsequent unsuccessful motion by the Debtor asking the* Court to reimpose the automatic stay, and while the Debtor has posited an argument on various occasions that the assignment of rents were ineffective based on a pre-petition mistake of fact type theory, as noted in this Court's Opinion, dated December 21, 1994, the Debtor has never caused this issue to be fully joined in this Court. On the contrary, the Debtor has given many indications of having abandoned it long ago.

For that reason, the Court previously determined that the Debtor has waived this argument. *See In re Ignatius D'Anna,* mem. op. at 2 n. 1 (Bankr. E.D.Pa. December 21, 1994).

For the purpose of clarity, the Court notes that the relevant point in time for determining the respective parties rights to the funds which constitute the retainer is when the collected rents were paid over to the Debtor's attorney as and for a retainer. Accordingly, other than establishing that the Debtor has waived any right to question the validity of the assignment of rents at this time, the aforementioned litigation has no relevance to the instant issue.

ty interest in specific rent payments." *In re Rancourt,* 123 B.R. 143, 147 (Bankr.D.N.H. 1991) (emphasis added); *see also, In re Northport Marina Associates,* 136 B.R. 911, 919 (Bankr.E.D.N.Y.1992) (same—citing *Rancourt* ).[3]

In *SeSide,* the court considered the respective rights of a mortgagee, holding a properly recorded assignment of rents—who had not "enforced" his interest by taking possession of the mortgaged property before a mortgagor filed a Chapter 11 petition, an intervening lien creditor, and a mortgagor-debtor to rents derived from the mortgaged property, and determined that the mortgagee could at any time in the future assert its rights and demand the rents. *SeSide,* 152 B.R. at 885. The court concluded, however, that the mortgagee's right to obtain the rents is "certainly prospective only," that is, the mortgagee by "enforcing" his rights to the rentals could recover the future rental stream of the mortgaged property only. *Id.*

In *Mountain View,* the Third Circuit Court of Appeals addressed the issue of whether rents become property of a debtor's estate upon the filing by the debtor of a Chapter 11 petition, or whether those rents are the property of that debtor's mortgagee, where the mortgagee had "enforced" its assignment of rents prior to the filing by the debtor of the bankruptcy petition. The court held that under Pennsylvania law, a mortgagee's liens on real property, as well as on rents generated from that property, under mortgages containing an assignment of rents clause, "arose when the mortgages were recorded," and remained continually valid and enforceable, subject only to third party claims arising before the mortgagee proceeded to enforce its rights. *Id.,* 5 F.3d at 39.

█ Neither the *SeSide* or *Mountain View* court, nor any of the other cases relied upon by the Association, address the nature and scope of the rights of a mortgagee-assignee to rents collected as compared to the competing rights of the mortgagor-assignor and third parties distributees of pre-petition rents collected and voluntarily distributed to third parties pre-petition. Those rights are not dealt with statutorily in Pennsylvania[4]. Nevertheless, the discussion of Pennsylvania real estate law set forth by the *SeSide* and *Mountain View* courts is helpful in analyzing the instant issue, and particularly illuminating with respect to those courts' discussion regarding the distinction between "perfection" and "enforcement," as well as the rights of an intervening lien creditor to rental proceeds subject to a properly recorded, albeit unenforced, lien.

The *Mountain View* court began its discussion of Pennsylvania law by noting that Pennsylvania is a title theory state. In *Randal v. Jersey Mortgage Investment Company,* 306 Pa. 1, 158 A. 865 (1932), the Pennsylvania Supreme Court explained the title theory approach, as follows:

> While ordinarily, as to third parties a mortgage may be security only for the debt specified in the accompanying bond, it is, as to the mortgagor and mortgagee, and those claiming under and through them, a conveyance of land, and may be enforced as such whenever the mortgagee deems it necessary so to do in order to enable him to speedily and effectively recover the amount then due on the bond.

█ If the mortgagor is in default, "enforcement" of the mortgagee's right to receive rents, even when the mortgage contains an assignment of rents provision, can only be accomplished by the mortgagee taking possession of the mortgaged property and applying the profits to the mortgage until the debt is paid. *Mountain View,* 5 F.3d at 38, citing *Bulger v. Wilderman and Pleet,* 101 Pa.Super. 168, 171 (Pa.Super.1931); *accord, SeSide,* 152 B.R. at 883, citing *Randal,* 306 Pa. at 6, 158 A. at 866; *Peoples–Pittsburgh Trust Co. v. Henshaw,* 141 Pa.Super. 585, 592, 15 A.2d 711, 714 (1940). "A mortgagee can

---

3. Notably, the real property law of New Hampshire and Massachusetts, which were the relevant state law being interpreted in *Rancourt,* require a mortgagee to enforce its rights in the same manner as required by Pennsylvania law, as is discussed below.

4. Rent assignments are outside the scope of the Pennsylvania Uniform Commercial Code. 13 Pa. Cons.Stat.Ann. § 9104(10); *see also, In the Matter of Bristol Associates, Inc.,* 505 F.2d 1056, 1061–62 (3d Cir.1974).

obtain 'possession' of realty and *consequently obtain a present right to receive rents* in two ways: (1) by entering into 'actual possession' of the real estate through foreclosure or acting as a mortgagee in possession; or (2) by taking 'constructive possession' of the realty by serving demand notices on the mortgagor's tenants." *SeSide*, 152 B.R. at 883 (emphasis added), citing *Fogarty v. Shamokin & Mount Carmel Transit Co.*, 367 Pa. 447, 451, 80 A.2d 727, 728–29 (1951); *Colbassani v. Society of Christopher Columbus*, 159 Pa.Super. 414, 417, 48 A.2d 106, 107 (1946); *Bulger v. Wilderman and Pleet*, 101 Pa.Super. at 176–77; *accord, Mountain View*, 5 F.3d at 38. In other words, until a mortgagee enforces its rights to rentals by taking "possession" of the mortgaged property, the mortgagee has no present rights to rents under Pennsylvania law, and a mortgagor is entitled to continue receiving the rents from the property. *See SeSide*, 152 B.R. at 883, citing *Randal*, 306 Pa. at 5, 158 A. at 865–66; *Colbassani*, 159 Pa.Super. at 417, 48 A.2d at 107; *Miners Sav. Bank of Pittston v. Thomas*, 140 Pa.Super. 5, 8, 12 A.2d 810, 813 (1940). This is so even though the mortgagee has a valid and enforceable interest in lien on the rental income stream. *Mountain View*, 5 F.3d at 38. Accordingly, in the instant case, the Association's obtained a present right to receive the rents of the mortgaged property only after it had issued its rent demand notices, if and when that occurred as the Association has alleged. Indeed, under *Mountain View*, the Association's present right to the rents is a complete proprietary interest; that is, upon enforcement of its mortgage and assignment of rents by issuance of the rent demand notices the rental proceeds ostensibly became the property of the Association and the Debtor had no further interest, apparently either legal or equitable, in the rents as they become due. *Mountain View*, 5 F.3d at 39; *In re Union Meeting Partners*, 165 B.R. 553, 564 (Bankr.E.D.Pa.1994).

■ In the instant case, to the extent that the Association is able to establish issuance of its rent demand notices, the moneys, which constitute the retainer and were collected from the Debtor's tenants after the rent demand notices were issued, belong to the Association and, accordingly, disgorgement would be required. Conversely, to the extent the Association fails to establish that notices were issued, since the Debtor had a right to receive the rents under Pennsylvania law, the Debtor had the right to use those rents as a retainer to employ bankruptcy counsel. These conclusions are further supported by the treatment accorded to an intervening lien creditor under Pennsylvania law.

As noted in *SeSide*, two Pennsylvania Superior court decisions address the relative rights of a mortgagee holding a properly recorded, yet "unenforced," assignment of rents and a lien creditor of the same mortgagor-debtor. *See generally, SeSide*, 152 B.R. at 883.

In *Miners Savings Bank of Pittston*, the mortgagee with an assignment of rents provision did not proceed to "enforce" its rights upon the mortgagor's default until after an intervening judgement creditor of the mortgagor sought to attach the rent generated by the mortgaged property. *Id.*, 140 Pa.Super. at 8, 12 A.2d at 813. The issue before the court was whether the judgment creditor, who served the attachment, was entitled to the rents once the mortgagee demanded that the tenants pay him. The court held that the judgment creditor was entitled to the rents until the mortgagee had given notice, because prior to the mortgagee's enforcement of its rights to the rents, the mortgagor was entitled to them. *Id.*, 12 A.2d at 812–13.

The *Miners* court explained that the judgment lien obtained by the creditor against the mortgagor was "junior in lien" to the previously "duly recorded" mortgage containing the rent assignment. *Id.* 12 A.2d at 811. When the creditor attempted to attach the rents, "[t]he attaching creditor attached only *what still remained to the debtor* ... [since] [a]s to him, the prior assignments ... were valid, and so they were as against his attaching creditors, *whose rights are no higher than his.*" *Id.* 12 A.2d at 812 (emphasis in original). Therefore, the *Miners* court reasoned:

> [T]he attachment is subjected to the superior rights of the mortgagee, if, as, and when he asserts them by giving the tenant

notice of his demand for payment of the rent accruing after such notice. It has no effect on the rents which the tenant owed as a debt to the judgment debtor when the attachment was served, or which accrued under the lease prior to the assertion by the mortgagee of his superior rights to the rents, by virtue of the conveyance in the mortgage; but as to rents accruing after notice and demand, the superior rights of the mortgagee take precedence over the rights of the mortgagor and those standing in his shoes.

*Id.; accord, Colbassani v. Society of Christopher Columbus,* 159 Pa.Super. at 417, 48 A.2d at 107 (dictum).

■ In the instant case, the Debtor's bankruptcy counsel's interest in the retainer is analogous to the interest, described above, of an intervening lien creditor. In other words, the Debtor's bankruptcy counsel was entitled to the rents until the Association gave notice, because prior to the Association's enforcement of its rights to the rents, the Debtor was himself entitled to those rents.

■ The Court also notes that under Pennsylvania law, there is a distinction between "accrued rents" and "unaccrued rents.[5]" The right to accrued rents is a personal property right. *Marine Nat'l Bank v. Northwest Pennsylvania Bank & Trust Co.,* 308 Pa.Super. 154, 159, 454 A.2d 67, 70 (1982). On the other hand, the right to unaccrued rents are part of the real property subject to a lien (mortgage). *Id.* If the right to accrued rents is a personal property right under Pennsylvania law, there can be no question that the right to collected rents, that is, money or negotiable instruments— which are themselves personal property, is also a personal property right. Based on this distinction, the Association's otherwise valid and enforceable lien is inchoate and "unperfected," with respect to collected rents, since Article 9 of the Uniform Com-

mercial Code applies to perfection of any interest in personalty, *see* 13 Pa.Cons.Stat. § 9101 et seq., and the Association admits that it has not complied with Article 9's perfection requirements with respect to the collected rents.

■ The Association complains that it would be inappropriate to characterize the retainer "as mere 'cash,' due to the mere fortuity or purposefulness of the Debtor's retention and transfer of the funds *received as rent* [to his bankruptcy counsel as a retainer]." Memorandum of Law at 15. While various issues are suggested by the Association's position, the Court finds the position both legally flawed and unpersuasive on the facts.

■ By using the word "purposefulness," the Association seems to suggest that the Debtor has acted in bad faith. It appears to the Court, however, that the Debtor sought bankruptcy counsel, and paid counsel the retainer, simply to protect his assets. That certainly is not an impermissible act of bad faith. Similarly, the Association asserts that Debtor's counsel acted improperly in accepting a retainer with knowledge of the Debtor's default position. The Court is unpersuaded. As fully discussed, the Debtor was entitled to the rental proceeds prior to the point in time at which the Association "enforced" its right to those same moneys.[6] The Association chose not to enforce its right. Moreover, although the Association had numerous opportunities to require the Debtor to establish some method of deposit whereby the Association could have established a properly perfected Article 9 interest in the moneys collected, to the extent possible under Article 9, there is no evidence in the record that the Association tried to compel the Debtor to enter into such an arrangement.

---

5. "Accrued rents" meaning rents owed by a tenant and uncollected. "Unaccrued rents" refers to the future rental income generated by the mortgage properties.

6. This Court has previously expressed the belief that retention of legal counsel usually is a normal operating expense of a business in financial difficulty. *In re Baltic Associates, L.P.,* Bankruptcy No. 93–23872 and *In re Mediterranean Associates, L.P.,* Bankruptcy No. 92–23873, mem. op. at 8 (Bankr.E.D.Pa. March 16, 1994) (Raslavich, J.)

The Association argues further that a retainer paid before commencement of a Chapter 11 proceeding to "secure" future payment of attorney's fees remains property of the estate until awarded to the by court order on appropriate application, after notice and hearing. The Association is apparently arguing that since the Debtor's estate arguably continues to have an interest in the retainer, and because the equities somehow weigh in favor of the Association, the Court should not allow payment of the now allowed interim fees from the retainer. The Court disagrees.

The Supreme Court's decision in *Butner* to the effect that the mortgagee's property rights should be no different just because of the happenstance of bankruptcy cuts both ways. While a mortgagee should not have any lesser property interests because of the bankruptcy filing, it would equally violate the *Butner* standard to give the mortgagee greater rights in the rental proceeds than the mortgagee would have had absent a bankruptcy filing.

The Debtor was entitled to the rents at the time he paid the retainer to his bankruptcy counsel. The right of the Debtor's bankruptcy counsel to the retainer is a derivative rights which arises from the Debtor's entitlement to the rent at that time. Accordingly, Butner would be violated if the Association's final argument was upheld.

For all of the foregoing reasons, the Association's objection to payment of the interim fees which the Court has previously allowed is rejected. The Association will be allowed two weeks subsequent to the filing of this Opinion in order to file a Motion seeking an evidentiary hearing to establish the extent to which the Association issued rent demand notices pre-petition. If the Association fails to file said Motion within that period, Debtor's counsel will be allowed to utilize its retainer in payment of the interim fees allowed.