**In re CITICORP PARK ASSOCIATES, Debtor.**

**Bankruptcy No. 94–20573.**

United States Bankruptcy Court, D. Maine.

April 4, 1995.

Robert J. Keach, Bernstein, Shur, Sawyer & Nelson, Portland, ME, for debtor.

Richard F. Casher, Hebb & Gitlin, Hartford, CT, for Aetna Life Ins.

### MEMORANDUM OF DECISION

JAMES A. GOODMAN, Chief Judge.

Debtor Citicorp Park Associates ("Citicorp") has filed this motion seeking permission to apply a pre-petition fee retainer and post-filing cash collateral towards allowed attorney's fees. Aetna Life Insurance Company ("Aetna") objects and maintains that the rents from Citicorp's property used to fund the retainer are the property of Aetna, and that Citicorp may not use Aetna's cash collateral because Aetna is not adequately protected.

Pursuant to hearings held on February 15, 1995 and March 7, 1995, and a Joint Partial Stipulation of Facts submitted by the parties, this Court makes the following findings of fact:

## I. FINDINGS OF FACT

1. Citicorp's main asset consists of a parcel of land in South Portland together with the buildings thereon and the rents, issues, and profits arising therefrom (the "Property").

2. Aetna has a claim against Citicorp for approximately $8,900,000 arising from a Promissory Note dated April 11, 1989 in the principal amount of $8,600,000 plus interest (the "Note"). The Note is secured by a valid, duly perfected, first priority lien and security interest in the Property pursuant to: (1) A Mortgage and Security Agreement (the "Mortgage") dated April 11, 1989; (2) An Assignment of Leases and Rentals (the "Assignment of Rents") executed by Citicorp, as assignor, in favor of Aetna dated April 11, 1989; and (3) UCC–1 financing statements executed by Citicorp. Joint Partial Stipulation of Facts, pp. 2–3.

3. The Assignment of Rents provided that until a default by Citicorp, the rents were the property of Citicorp. Paragraphs 1 and 2 of the Assignment of Rents stated in pertinent part that:

"1. So long as there shall exist no default by the Assignor in the payment of any indebtedness secured hereby or in the performance of any condition, obligation, covenant or agreement contained here or in any of the Loan Documents in said Leases, the Assignor shall have the right to collect at the time or, but not prior to, the date provided for the payment thereof, all rents, income and profits arising under said Leases or from the premises described in Schedule A, to retain, use and enjoy the same, and to retain, use and enjoy all personal property and fixtures in the possession of Assignor under the Leases.

2. Upon or at any time after default in the payment of the indebtedness secured hereby, or upon or after default in the performance of any condition, obligation, covenant or agreement contained herein or in any of the Loan Documents or in said Leases, the Assignee without in any way waiving such default may at its option without notice and without regard to the adequacy of the security for the indebtedness secured hereby, either in person or by agent, with or without bringing any action or proceeding, or by a receiver appointed by a court, take possession of the premises described in the Leases and/or the premises described in the Mortgage, and all books and records pertaining to said premises ..."

4. In a letter dated July 12, 1994, Aetna, through its counsel, served upon Citicorp a notice of a default (the "Notice of Default") of Citicorp's obligations to Aetna arising under the Note, Mortgage and Assignment of Rents. The Notice of Default stated in pertinent part that:

"[i]f the Maker does not cure the default by payment of the total amount now due within ten (10) days from the date of this letter, Aetna will accelerate all obligations under the Promissory Note, Mortgage, and related Lending Documentation and require immediate payment in full of the entire loan balance without further notice, and proceed with legal action to enforce its rights." (Emphasis in original) Exhibit B to Joint Partial Stipulation of Facts, p. 3.

5. Before the close of business on July 22, 1994, Citicorp paid the law firm of Bernstein, Shur, Sawyer & Nelson (the "Applicant") $35,000 in cash or cash equivalent funds as a retainer for legal services (the "Retainer"). Joint Partial Stipulation of Facts, p. 3. Record of February 15, 1994 hearing, pp. 6–7.

6. The Retainer was paid from funds maintained in Citicorp's money market account (the "Account") at Citibank (Maine), N.A., which funds were proceeds of rents and profits (the "Rents") collected by Citicorp from the Property. Joint Partial Stipulation of Facts, p. 3.

7. On July 27, 1994, Citicorp filed for protection under Chapter 11 of the Bankruptcy Code.

8. On August 10, 1994, Citicorp and Aetna executed a "Stipulation and Consent Order Authorizing and Conditioning Debtor's Use of Rents and Providing Adequate Protection of Aetna Life Insurance Com-

pany's Interest in Rents" (the "Cash Collateral Stipulation"). The Cash Collateral Stipulation was approved by the Court on August 25, 1994, and has been extended by agreement of the parties. Pursuant to the Cash Collateral Stipulation, Citicorp was permitted to use the Rents inter alia to pay the "ordinary, necessary and reasonable postpetition operating expenses of the Property." Cash Collateral Stipulation, p. 6.

9. The value of the future rental stream from the Property, and the value of the Property itself, are increasing. Record of February 15, 1995 hearing, pp. 12–15.

10. As of the petition date and as of the date of this proceeding, the Aetna claim is substantially undersecured. Joint Partial Stipulation of Facts, p. 4.

## II. ANALYSIS

On December 22, 1994, Applicant filed its First Interim Application for Compensation and Reimbursement of Expenses seeking (1) to apply the Retainer towards its allowed attorney's fees [1] and (2) seeking authority to use cash collateral to pay attorney's fees.[2] Each of these is addressed below.

### 1. USE OF THE RETAINER

▆▆ Aetna objects to the use of Retainer on the grounds that the Rents used to fund the Retainer are the property of Aetna because: (1) The Rents constitute the cash collateral of Aetna; and, (2) The Assignment of Rents document created an absolute assignment which transferred title in the Rents to Aetna immediately upon Citicorp's default.

This Court disagrees with Aetna. Courts have held a mortgagee must take steps beyond perfection to obtain the right to take rents. In In re D'Anna, 177 B.R. 819 (Bankr.E.D.Pa.1995), the bankruptcy court, applying Pennsylvania law, held that if a

retainer paid to debtor's bankruptcy counsel prepetition was paid from rents collected by the Debtor prior to the secured creditor's enforcement of a rent assignment, the funds used to pay the retainer were not cash collateral. The court ruled that "until a mortgagee enforces its rights to rentals by taking 'possession' of the mortgaged property, the mortgagee has no present rights to rents under Pennsylvania law, and the mortgagor is entitled to continue receiving the rents from the property. This is so even though the mortgagee has a valid and enforceable interest in lien on the rental income stream." Id. at 825.

Similarly, under Maine law, unless the parties modify the mortgage agreement, "the right to rents and profits ... can derive only from those rights that a mortgagee has incidental to foreclosure upon default. Under these circumstances a mortgagee may be entitled to rents and profits upon a default if it either takes possession of the property or has a receiver appointed to collect the rents and profits." In re Somero, 122 B.R. 634, 638 (Bankr.D.Me.1991). Furthermore, as Judge Haines stated in In re Dorsey, 155 B.R. 263 (Bankr.D.Me.1993), "absent extraordinary contractual terms, a rent assignee does not obtain an immediate right to take the rents upon execution of the assignment or upon its recordation. The assignee's right to collect rents or take them as they are collected matures, at the earliest, upon the assignor's default of the obligation secured by the assignment." Id. at 268–69.

In the instant case, Aetna could not take the steps necessary to enforce its rights in the Rents, because under the terms of the Notice of Default, Citicorp had ten days (from July 12, 1994 to July 22, 1994) to cure any default before Aetna took enforcement actions.[3] Therefore, when Citicorp paid the Retainer to the Applicant on July 22, 1994, it

---

1. At a hearing held on January 17, 1995, this Court entered an order approving allowance of attorney's fees and expenses, and took under advisement the issue of applying the Retainer towards these allowed fees.

2. At a hearing on March 7, 1995, this Court approved the use of cash collateral to pay all professional fees except attorney's fees, and took

under advisement the issue of the use of cash collateral to pay attorney's fees.

3. Though it is not necessary for this Court to evaluate what steps Aetna needed to take to properly enforce its rights in the Rents, it is sufficient to note that whatever these steps were, Aetna had not taken them.

was before the end of the cure period and the Rents used to fund the Retainer were the property of Citicorp.[4]

### 2. USE OF CASH COLLATERAL TO PAY ATTORNEY'S FEES

■ Aetna maintains that because it is not adequately protected, Citicorp may not use Aetna's cash collateral to pay Citicorp's attorney's fees. Aetna argues that, due to the Assignment of Rents, it has an interest in property which is entitled to adequate protection independent of the adequate protection rights of its overall security interest under the mortgages and rental assignments. Therefore, because it already has separate property rights in the Rents, Aetna asserts that the replacement lien provided in future Rents does not provide adequate protection for Aetna.

This Court disagrees. The overall value of Aetna's interest in the collateral in question already considers the rental stream. Since Aetna is undersecured but the collateral is not depreciating, Citicorp may use the rental income because Aetna is adequately protected. *See In re Mullen,* 172 B.R. 473, 476–78 (Bankr.D.Mass.1994). The foregoing constitutes findings of fact and conclusions of law pursuant to F.R.Bky.P. 7052.

An appropriate order shall enter.

### ORDER

Pursuant to a Memorandum of Decision of even date herewith, it is hereby

ORDERED that the $35,000 retainer and the cash collateral may be used to pay allowed attorney's fees.

---

4. .Because of the language in the Assignment of Rents that provided that the Rents were the property of Citicorp until a default, this Court holds that the Assignment of Rents was not an absolute assignment but a collateral security interest. *See In re Mocco,* 176 B.R. 335, 340–42 (Bankr.D.N.J.1995). Because of this, and, as discussed above, Aetna was required to take steps to enforce its rights in the Rents before the Rents became the property of Aetna.