FILED

OCT 28 2015

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

**NOT FOR PUBLICATION**

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

| | |
|---|---|
| In re: | BAP No. CC-14-1421-PeTaKu |
| ANDREW STEPHAN HUTCHINGS and GINA AUTORE HUTCHINGS, | Bk. No. 2:12-bk-46632-ER |
| Debtors. | Adv. No. 2:12-ap-02723-ER |
| ANDREW STEPHAN HUTCHINGS, | |
| Appellant, | |
| v. | **MEMORANDUM**[1] |
| BONDCORP REALTY SERVICES, INC., | |
| Appellee. | |

Argued and Submitted on July 23, 2015
at Pasadena, California

Filed – October 28, 2015

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Ernest M. Robles, Bankruptcy Judge, Presiding

_____

Appearances: David B. Lally argued for appellant; Edward P. Kerns argued for appellee.

_____

---

[1] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8024-1.

Before: PERRIS,[2] TAYLOR, and KURTZ, Bankruptcy Judges.

In this adversary proceeding to determine the dischargeability of a debt under § 523(a)(2)(A),[3] debtor Andrew Hutchings ("debtor") appeals the judgment against him for $821,647.68, which the court found nondischargeable. He challenges a number of the court's findings of fact. The judgment arose from a scheme in which debtor used strawmen to obtain a loan for the purchase of property, directing the purchase and loan application process in other people's names.

We conclude that the bankruptcy court did not err in finding that the debt is nondischargeable under § 523(a)(2)(A), but REVERSE and REMAND for the bankruptcy court to enter an amended judgment for damages of $302,000.

## FACTS[4]

Debtor is a licensed real estate agent/broker. During the

[2] Honorable Elizabeth L. Perris, Bankruptcy Judge for the District of Oregon, sitting by designation.

[3] Unless otherwise indicated, all chapter and section references are to the federal Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037. References to "FRE" are to the Federal Rules of Evidence, FRE 101-1103.

[4] Debtor failed to designate all of the pertinent documents as part of the record on appeal. Where as here the documents are included in the court's electronic docket, the panel can retrieve them from the docket and consider them on appeal. See O'Rourke v. Seaboard Sur. Co. (In re E.R. Fegert, Inc.), 887 F.2d 955, 957-958 (9th Cir. 1989).

events in 2006 and 2007 that led to this adversary proceeding, he owned and was the sole employee of Clubhouse Properties, Inc. The office for Clubhouse Properties was at debtor's house.

In late September 2006, debtor's father, Alfred Hutchings, Sr. ("Hutchings, Sr."), purchased a house on Ximeno Ave., Long Beach, California ("the property"), for $629,500. On October 18, 2006, Hutchings, Sr. transferred the property to Marc Anthony, who worked for Hutchings, Sr. as a handyman, as a gift for no consideration. On that same date, Anthony deeded the property to Isabel Esparza through a grant deed evidencing a purchase price of $835,000.

In connection with the transaction from Anthony to Esparza, Fred Rivera, a mortgage banker, submitted a loan application to Bondcorp Realty Services, Inc. ("Bondcorp"), the appellee in this appeal, seeking a loan based on the purchase price of $835,000. The loan file included a Uniform Residential Loan Application, the purchase agreement, a verification of employment, Esparza's credit report, and an appraisal showing the property was worth in excess of $835,000. The loan application indicated that Esparza was self-employed as a stock trader/investor earning approximately $30,000 per month.

Rivera obtained all of the information for the loan application from debtor, who was the contact person for the loan. Before he submitted the loan file to Bondcorp, Rivera contacted debtor and told him that he needed verification of Esparza's self-employment income from an accountant, based on lender requirements of such verification. The verification provided was a letter from Tax

3

Professionals, LLC, purportedly signed by Don Abrams, which was sent via facsimile from debtor's home office of Clubhouse Properties. It verified that Esparza had been a customer of Tax Professionals since 1999 and that she generated income from her self-employment as a stock trader/investor.

In fact, Esparza, who was the girlfriend of debtor's brother, had not been a customer of Tax Professionals. Instead, she was a kindergarten teacher and had never been self-employed as a stock trader/investor.

The verification letter was a forgery. Abrams, an employee of Tax Professionals, had not prepared, signed, or transmitted the letter, nor had he authorized debtor or Clubhouse Properties to use his letterhead. Indeed, the letterhead was not one that Tax Professionals used. Further, Abrams was acquainted with debtor, who would come to the office on occasion. However, Abrams had never spoken to Esparza.

Bondcorp obtained the loan documents from Rivera, with whom it had done more than a hundred transactions. In approving the loan, Bondcorp would check the borrower's credit report and, for applicants who were self-employed, would verify through an accountant the borrower's self-employment information. As already discussed, Rivera provided such documents as part of the loan package; he did not know that they were forged.

Bondcorp funded the loan in the amount of $751,250, using a combination of two trust deeds, one for $626,250 and one for $125,000. It relied on the forged income verification letter, along

4

with other documents, in approving the loan.

From the sale of the property, Anthony was issued a check, c/o Clubhouse Properties, for $238,794.49, which was sent to debtor at Clubhouse Properties. Esparza as buyer was issued a check, c/o Clubhouse Properties, for $393.00, which was also sent to debtor at Clubhouse Properties. Debtor deposited both checks in the Clubhouse Properties bank account. Debtor never paid any of the funds from the loan to either Esparza or Anthony.

Bondcorp sold the loan to Countrywide. Its agreement with Countrywide required Bondcorp to indemnify Countrywide for any loss or costs if the loan went into default.

Esparza never made any payments on the loan, and Countrywide foreclosed. The property was sold at a foreclosure sale for approximately $549,900. Bondcorp was required to and did pay Countrywide $302,000 for Countrywide's losses in connection with this loan.

After debtor filed bankruptcy, Bondcorp filed this complaint, seeking a determination that the debt owed by debtor to Bondcorp is nondischargeable under § 523(a)(2)(A) and (B). At trial, the court held against Bondcorp on the § 523(a)(2)(B) claim but found that debtor had defrauded Bondcorp by his conduct in providing the Tax Professionals letter to Rivera, and concluded that a debt of $821,647.68 was nondischargeable under § 523(a)(2)(A).

Debtor appealed, challenging the § 523(a)(2)(A) judgment. Bondcorp did not cross-appeal the judgment against it on the § 523(a)(2)(B) claim.

5

JURISDICTION

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(I). We have jurisdiction under 28 U.S.C. § 158.

ISSUES[5]

1. Whether the bankruptcy court erred in finding that debtor made a representation.

2. Whether the bankruptcy court erred in finding that Bondcorp relied on the representation.

3. Whether the bankruptcy court erred in finding damages in the amount of $821,647.68.

STANDARD OF REVIEW

The panel reviews a court's legal conclusions de novo, and its findings of fact for clear error. Hansen v. Moore (In re Hansen), 368 B.R. 868, 874 (9th Cir. BAP 2007). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." United States v. U.S. Gypsum Co., 333 U.S. 364, 395 (1948). If the evidence supports two views, "the trial judge's choice between them cannot be clearly erroneous." Hansen, 368 at 875. Findings of fact based on credibility are given particular deference. Oney v. Weinberg (In re Weinberg), 410 B.R. 19, 28 (9th Cir. BAP 2009). The panel

---

[5] We have consolidated the issues identified in debtor's Opening Brief because debtor's numerous issues are difficult to decipher.

6

will affirm the court's factual finding "unless that finding is illogical, implausible, or without support in inferences that may be drawn from the record." United States v. Hinkson, 585 F.3d 1247, 1263 (9th Cir. 2009).[6]

The court's evidentiary rulings are reviewed for abuse of discretion. Hansen, 368 B.R. at 875. The court abuses its discretion if it applies the wrong legal standard or if its application of the correct legal standard "is illogical, implausible, or without support in inferences that may be drawn from the record." Hinkson, 585 F.3d at 1263. "To reverse an evidentiary ruling, we must conclude that the error was prejudicial." Hansen, 368 B.R. at 875.

DISCUSSION

Debtor argues that the bankruptcy court erred in finding that the debt to Bondcorp is nondischargeable under § 523(a)(2)(A). To establish that a debt is nondischargeable under § 523(a)(2)(A), a creditor must show:

> (1) misrepresentation, fraudulent omission or deceptive conduct by the debtor; (2) knowledge of the falsity or deceptiveness of his statement or conduct; (3) an intent to deceive; (4) justifiable reliance by the creditor on the debtor's statement or conduct; and (5) damage to the creditor

---

[6] Throughout his opening brief, debtor argues that the court's findings are reviewed for abuse of discretion, citing Cortez v. Am. Wheel, Inc. (In re Cortez), 191 B.R. 174 (9th Cir. BAP 1995). That case was an appeal of an order denying reopening of a case. Here, the main issues are whether there is evidence to support the bankruptcy court's findings. A court's findings are reviewed for clear error, not abuse of discretion. Fed. R. Bankr. P. 7052; Fed. R. Civ. P. 52(a)(6); Hansen, 368 B.R. at 874.

7

proximately caused by its reliance on the debtor's statement or conduct.

Turtle Rock Meadows Homeowners Ass'n v. Slyman (In re Slyman), 234 F.3d 1081, 1085 (9th Cir. 2000).

Debtor argues that the bankruptcy court erred in finding (1) that debtor made a representation; (2) that Bondcorp relied on any representation and that any reliance was reasonable or justifiable; and (3) that Bondcorp's damages were $832,647.68.

1.    Representation

The bankruptcy court found that, in connection with the loan application, debtor submitted a forged letter on a Tax Professionals letterhead verifying that Esparza "generates income through self employment as a stock trader/investor." Exh. 85. The letter was provided to Rivera to submit to Bondcorp in response to a request to verify that Esparza was a self-employed bond trader with income of $30,000 per month. There is no dispute that the representation in the letter was false; in fact, Esparza was a kindergarten teacher.

Debtor argues in passing that the bankruptcy court erred in admitting Exhibit 85 into evidence. The entirety of the argument in his brief is:

Finally, the Court made errors of law by admitting into evidence Trial Exhibits 85, 95 and 96. They lacked foundation, were hearsay, and lacked authentication. Appellant repeatedly objected to the introduction of those Exhibits yet without any foundation or authentication the Court allowed them into evidence. See TR of 7/1/13 Page 83, lines 13-25. All of Pages 84 and 85, Page 86, Lines 1-17. This was an error of law.

Appellant's Opening Brief at 15.

We need not consider whether admission of Exhibits 95 and 96

8

was proper; the bankruptcy court did not rely on those documents and did not find that they constituted representations of debtor that supported the § 523(a)(2)(A) claim. The court relied solely on Exhibit 85; it is the admission of that exhibit that we must review.

As discussed above, evidentiary rulings are reviewed for abuse of discretion. Hansen, 368 B.R. at 875. Although it is true that a court abuses its discretion if it makes an error of law, Hinkson, 585 F.3d at 1261, debtor does not identify any error of law that the bankruptcy court made. A court's determination that the proponent of an exhibit has laid an adequate foundation and properly authenticated the exhibit is a factual determination.

In this case, the court admitted the exhibit after Rivera testified that he had received the document from debtor, and that the document had a Clubhouse Properties facsimile legend at the top. Debtor does not explain why this testimony did not lay a proper foundation or properly authenticate the document. The document is not hearsay; it is not offered to prove the truth of the matter asserted but instead to show that the statement was made.[7] See Vol. 2, Hon. Barry Russell, BANKRUPTCY EVIDENCE MANUAL § 801:4 at p.934 (2014-2015 Ed.). Debtor has not demonstrated that the court abused

_____

[7] The truth of the matter asserted in the letter was that Esparza had been a customer of Tax Professionals since 1999 and that she had self-employment income as a stock trader/investor. The court did not admit the exhibit or consider it as proof of those statements; it admitted and considered the exhibit as proof that the statements, which were false, had been made and were transmitted to Bondcorp.

9

its discretion in admitting the document.

Debtor argues that the evidence does not support the court's finding that debtor made a representation. Specifically, he argues that there is no evidence that debtor wrote the Tax Professionals letters, particularly in light of debtor's testimony that he did not write the letters.

The only letter on which the bankruptcy court relied is Exhibit 85. Debtor is correct that there is no direct evidence that debtor wrote the letter. Debtor denied that he wrote the letter or that he sent it via facsimile to Rivera. However, the bankruptcy court explained that debtor's testimony was not credible. It relied on the fact that the facsimile legend on the top of the letter showed a telephone number that belonged to debtor's business, supporting its finding that the letter came from debtor's home office.[8] Although debtor testified that he never used the main home

[8] Debtor testified that he had phone records showing that there was no call to Rivera from his home office on the date the fax was sent, but the phone records were not admitted into evidence because they failed to include the date on which the fax was sent.

In his opening brief, debtor argues that, "when confronted with Defendant's telephone invoice for the day and time of the alleged Exhibit 85 fax from Appellant to Rivera, he could not explain how his telephone number was on Appellant's Exhibit 1." Appellant's Opening Brief at ¶ 57. Debtor's counsel repeated the assertion at oral argument, but did not provide any reference to the record. The portions of the transcript cited in the brief do not support that statement; in fact, the transcript shows that debtor's counsel attempted to question Rivera regarding a document that he represented was debtor's phone records, but the court sustained

(continued...)

10

office telephone to send faxes, he did not testify that it was impossible to do that. The court also relied on the fact that debtor was the only person who had access to the fax machine in his home office.

The court also rejected the argument that the faxed letter came from either Rivera or Bondcorp, explaining that those parties had too much to lose by using falsified information for the loan. It also considered the testimony of Abrams, the person who purportedly signed the faxed letter, that the letterhead was not the letterhead used by Tax Professionals, that he did not prepare the letter, and that the signature on the document under his name was not in fact his signature. The court noted that debtor was familiar with Tax Professionals and knew Abrams personally.

Based on the evidence presented at trial, the court found that debtor was the point person for the loan transaction: he opened the escrow; he directed documents to go from escrow to him; and he filled out escrow documents. Given all of this evidence, the court concluded that debtor had in fact been the person who prepared and sent the falsified Tax Professionals letter to Rivera.

Debtor has not shown that this finding was clear error. There was evidence to support the finding that the facsimile telephone

---

[8](...continued) objections to the document and the questions based on the document because the records were not the witness's records, they had not been admitted into evidence and there had been no foundation laid for them. Rivera never testified that his telephone number was or was not on Appellant's Exhibit 1 (the phone records).

11

number on the document was the number from debtor's home office; that debtor was the only person who worked in his home office; that debtor was the mastermind behind the loan and was the person with whom Rivera communicated; that Rivera had asked debtor for verification of Esparza's income; that Abrams had not written or sent the letter himself; and that debtor deposited the loan proceeds in the Clubhouse Properties bank account. Particularly in light of the trial court's finding that debtor's testimony denying his involvement in the preparation and transmission of the letter to Rivera was not credible, we cannot say that the finding that debtor prepared and transmitted the letter, which made the false representation, was "illogical, implausible, or without support in inferences that may be drawn from the record." See Hinkson, 585 F.3d at 1263.

Debtor argues that there is no evidence of a loan because the loan application that was offered into evidence was not admitted because it was not signed. It is not clear what debtor is trying to establish with this argument. It is undisputed that there was a loan made to Esparza. The lack of a signed loan application does not change that undisputed fact.

Debtor's main complaint seems to be that debtor could not be liable for a misrepresentation if he was not the buyer or the seller or the applicant for the loan. However, the bankruptcy court found, and there is evidence to support the finding, that debtor directed the loan application process and provided the income verification letter, which was a misrepresentation. A debtor need not have

12

received a benefit as a result of a misrepresentation; "whether the debt arises from fraud is the only consideration material to nondischargeability." Muegler v. Bening, 413 F.3d 980, 983 (9th Cir. 2005).[9] Thus, the fact that debtor was not the named buyer, seller, borrower, or agent for either buyer or seller is irrelevant, where he made the misrepresentation that was fraudulent.[10]

The bankruptcy court did not err in finding that debtor made the representation.

2. Reliance

Debtor next argues that the bankruptcy court erred in finding that Bondcorp relied on the misrepresentation contained in the Tax Professionals verification letter and that any reliance was justifiable.

---

[9] There is evidence that debtor did, in fact, receive a benefit. The testimony was that the proceeds of the loan that were to go to the buyer and the seller were deposited into debtor's Clubhouse Properties bank account, and that the proceeds were not disbursed to either the buyer or the seller.

Debtor argues in his opening brief that Anthony signed the proceeds check and that after the check cleared, Clubhouse Properties disbursed funds to Alfred Hutchings Jr. and Alfred Hutchings Sr. He does not cite to any evidence to support those assertions. The only testimony we could find that would support the assertions is debtor's testimony that some of the proceeds of the sale went to Hutchings Sr. In light of the trial court's finding that debtor was not credible, the trial court was entitled to disbelieve that testimony.

[10] Debtor argues in passing that there was no evidence of intent, because debtor never made a representation. He does not argue that, if there was a representation, the court erred in finding intent.

13

Debtor's argument that Bondcorp did not rely on the Tax Professionals' letter is premised primarily on the facts that there was no testimony from a person with personal knowledge of the loan transaction, that Bryan Bond of Bondcorp testified that he did not see the letter until after the loan went into default, and that Bondcorp relied on many documents including Countrywide's guidelines, not debtor's representation, in approving the loan.

There was evidence to support the bankruptcy court's finding of reliance. Most importantly, there was testimony that Bondcorp needed verification of Esparza's income and that it would not have made this loan if it had not gotten that verification. The fact that Bondcorp also relied on other documents and guidelines does not belie the fact that it would not have made the loan without the income verification provided by debtor.

It is of no consequence that Bond did not see the document until after the loan had gone into default. He was not the broker who approved the loan, but testified about the company's practices in making loans such as the one involved here.

The bankruptcy court's finding of reliance is not implausible or illogical and is supported by inferences supported by the record.

Debtor also argues that any reliance was not reasonable or justifiable. He first argues that justifiable reliance is measured by an objective standard: the degree of care exercised by a reasonably cautious person in the same transaction under similar circumstances, citing <u>Gertsch v. Johnson & Johnson, Fin. Corp.</u>

14

(In re Gertsch), 237 B.R. 160, 167-168 (9th Cir. BAP 1999).[11]

Reliance for purposes of establishing fraud under § 523(a)(2)(A) need not be reasonable, but it must be justifiable. Field v. Mans, 516 U.S. 59, 74 (1995). This entails looking "to all of the circumstances surrounding the particular transaction," in particular "the subjective effect of those circumstances upon the creditor." Eugene Parks Law Corp. Defined Benefit Pension Plan v. Kirsch (In re Kirsh), 973 F.2d 1454, 1460 (9th Cir. 1992).

> The general rule is that a person may justifiably rely on a representation even if the falsity of the representation could have been ascertained upon investigation. In other words, negligence in failing to discover an intentional misrepresentation is no defense. However, a person cannot rely on a representation if he knows that it is false or its falsity is obvious to him. In sum, although a person ordinarily has no duty to investigate the truth of a representation, a person cannot purport to rely on preposterous representations or close his eyes to avoid discovery of the truth.

Romesh Japra, M.D., F.A.C.C., Inc. V. Apte (In re Apte), 180 B.R. 223, 229 (9th Cir. BAP 1995), quoted with approval in Citibank (S.D.), N.A. v. Eashai (In re Eashai), 87 F.3d 1082, 1090 (9th Cir. 1996).

The bankruptcy court found that Bondcorp's reliance on the Tax Professionals' letter was justifiable because of its long history of

---

[11] In his brief, debtor also provides a partial citation to another case, In re Hill. However, he provides only a year for the decision but no other citation. At oral argument, counsel provided the bankruptcy judge's name for that case, and we have located a case captioned Nat'l City Bank v. Hill (In re Hill), 2008 WL 2227359 (Bankr. N.D. Cal. 2008). That case arose under § 523(a)(2)(B), which requires reasonable reliance. Here, the § 523(a)(2)(A) claim requires proof of justifiable reliance.

15

doing business with Rivera, including the fact that no loan Rivera originated for Bondcorp had ever gone into default. Debtor does not point to anything about the letter that made its falsity obvious or preposterous. The evidence was sufficient for the bankruptcy court to find that Bondcorp's reliance on the Tax Professionals' income verification letter was justified.

### 3. Damages

Finally, debtor argues that the evidence does not support the court's award of $821,647.68 in damages.[12] He acknowledges evidence to support damages of $302,000, but says there is no evidence to support the higher amount awarded. He also complains that the court did not take into account other amounts received by Bondcorp in separate litigation against other participants in the loan transaction.

Debtor does not provide any legal authority to support his argument that any damages should have been reduced by amounts Bondcorp received from other parties who were sued in state court on this transaction. He may be claiming a right to a reduction of damages under Cal. Code Civ. Proc. § 877(a), which provides that a release by one tortfeasor reduces the claims against the other tortfeasors. This rule requires that the settling parties be joint tortfeasors who are liable to the plaintiff for the same injury. 22 AM.JUR.2D "Damages" at § 401 (2013).

---

[12] He does not argue that the damages were not proximately caused by the misrepresentation.

16

There is evidence that Bondcorp sued other participants in this scheme, but no evidence of any amounts those defendants may have paid in settlement of the claims. Nor does the evidence demonstrate what claims Bondcorp pursued against the other parties. The non-settling defendant, debtor, has the burden to show that he is entitled to a reduction. 22 AM.JUR.2D "Damages" at § 401. In the absence of evidence about what claims were pursued against other parties and what amounts were paid in settlement of those claims, debtor has not demonstrated that the court erred by failing to reduce damages by amounts of settlement payments.

As for evidence supporting the amount of damages awarded, the bankruptcy court said, "The Court finds that the plaintiff sustained damages in the amount based upon the testimony – uncontradicted testimony of Mr. Bond in the amount of $821,647.69." 8/5/14 Tr. at 42:2-6.[13]

The transcript references to Bond's testimony provided by the parties in the briefs do not contain any testimony - uncontradicted or otherwise - of Bond that Bondcorp's damages were $821,647.69. The testimony on June 30 cited by Bondcorp shows a loan origination fee, administrative fee, and processing fee of $9,393.75, $395.00, and $595.00, respectively. It also demonstrates that Bondcorp funded two loans, of $626,250 and $125,000. There is no testimony or evidence about how much Bondcorp was paid when it sold the loans

---

[13] Although the court said it was awarding $821,647.69, the judgment awards $821,647.68.

17

to Countrywide. The July 1 transcript includes Bond's testimony that, after Countrywide foreclosed on the property (which was sold for $549,900), Bondcorp was required to and did indemnify Countrywide by paying $302,000 for losses it incurred on these loans.[14]

After oral argument, the panel issued an order requiring Bondcorp to provide specific citations to the transcript that support the amount of damages awarded. Bondcorp's response does not point to any testimony that supports the bankruptcy court's quantification of damages. We have reviewed the entire transcript of Bond's testimony and find no mention of damages in the amount awarded by the court.

Bondcorp argues that the award of damages consisted of a number of elements, "including attorney fees, costs, and other damages," Appellee's Opening Brief at 23, and that it provided evidence of even more damages than what the bankruptcy court actually found. There was evidence of the amount of the loan, but the loan amount is not the measure of damages; the loan was sold to Countrywide, for an unspecified amount. There was no evidence of the amount of any attorney fees or other damages. There was evidence of certain fees charged for the loans (loan origination fee, administrative fee, processing fee), but no explanation for why those fees should be included in the award of damages.

---

[14] The complaint in this case sought damages of $302,250 plus interest and attorney fees.

18

The only evidence of damages that we find in the record is the $302,000 indemnification payment that Bondcorp made to Countrywide. Because the evidence at trial does not support the award of damages in the amount of $821,647.68, the bankruptcy court clearly erred in awarding that amount as damages.

4. Esparza's testimony

Debtor argues that the court erred in holding debtor liable when Esparza exercised her Fifth Amendment right against self-incrimination, and in finding that Esparza was damaged by this loan transaction. He says that her assertion of her rights showed that she had something to hide and had no bearing on the issues before the court.[15]

Whether Esparza was damaged had no bearing on the issues before the court. It does not appear that the court's statements about Esparza were anything other than an explanation for why it found that debtor, not Esparza, was the person in charge of the loan transaction. Debtor has not demonstrated any error by the court's consideration of Esparza's testimony or its conclusion that she was harmed by the transaction.

CONCLUSION

The bankruptcy court did not err in finding that debtor committed fraud in connection with the Esparza loan transaction and

---

[15] Debtor does not provide any citation to the record to show that he objected to Esparza's testimony, and we could not find an objection to allowing her to testify despite her frequent assertions of her Fifth Amendment right.

19

that the debt arising from that transaction is therefore nondischargeable under § 523(a)(2)(A). However, the evidence does not support the amount of its award of damages. The trial evidence supports an award of damages in the amount of $302,000.

Therefore, we REVERSE and REMAND for the bankruptcy court to enter an amended judgment awarding damages in the amount of $302,000. The judgment is AFFIRMED in all other respects.