Miners Savings Bank of Pittston *v.* Thomas et al.
(Meyer, Appellant).

Argued March 5, 1940.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, RHODES and HIRT, JJ.

6

*Nathan Hyman,* with him *Frank L. Pinola,* for appellant.

*M. J. Mulhall,* with him *John T. Mulhall,* for appellee.

Opinion by Keller, P. J., April 22, 1940:

The question involved in this appeal may be stated as follows: Where a mortgage conveys to the mortgagee the rents, issues and profits of the mortgaged real estate, and is in default, is a later judgment creditor of the mortgagor, who issues an attachment execution and serves the tenant as garnishee, entitled to the rents *accruing after* notice and demand by the mortgagee to the tenant to pay the rent to him, as mortgagee; particularly where no order has been made by the court on the sheriff to collect the rents for the attaching creditor, pursuant to Act of June 13, 1836, P. L. 568, secs. 66 and 67, 12 PS secs. 2944-2945?

The answer is, No.

In discussing the case, we shall pay no attention to statements in the appellee's argument which run counter to the agreed statement of facts filed pursuant to Rule 56 of this court.

From this statement the following essential facts are taken:

Adrian R. Stevens is the owner of certain real estate in the Borough of West Pittston, which is rented to the Pittston Oil Company (the garnishee in this attachment execution), at a rental of $30 per month, payable in advance on the ninth day of each month. When the lease was made the real estate was subject to a mortgage of $2500, given by Stevens to D. H. Meyer and Anna Meyer, his wife, duly recorded, on which the principal, and interest since January 2, 1923, are due and unpaid. The mortgage is admittedly a first lien on the real estate. It contained a clause granting and conveying to the mortgagees the rents, issues and profits of the mortgaged premises, (see *Randal v. Jersey*

*Mortgage Inv. Co.,* 306 Pa. 1, 6, 158 A. 865), as security for the payment of the mortgage debt. Anna Meyer is the surviving mortgagee.

The plaintiff, Miners Savings Bank of Pittston, obtained a judgment for $1500 against said Adrian R. Stevens et al. to No. 180 July Term, 1935, which is junior in lien to Mrs. Meyer's mortgage.

On March 14, 1936, the bank caused an attachment execution to issue on said judgment, and served the writ the same day on Pittston Oil Company, tenant of the mortgaged premises, as garnishee. On April 13, 1936, the mortgagees caused a notice to be served on the tenant, demanding payment of the rent to them under the provisions of the mortgage. On the date of the service of said notice, two months' rent, $60, was due and owing by the tenant under the terms of the lease, to wit, the rent due March 9, for the month of March, and the rent due April 9, for the month of April.

The court below (McLean, P. J.) on January 28, 1937, entered judgment in favor of the plaintiff for $36, the rent accrued under the lease for the period from March 9, 1936 to April 13, 1936,[1] which it held was subject to the attachment, but also held that disposition of the rental accruing after the mortgagees' notice to the garnishee must await the outcome of the issue raised by the answer of the surviving mortgagee, who had been allowed to intervene in the attachment and file an answer.

Subsequently, the garnishee having admitted in its answer to interrogatories, that it owed rent under said lease from March 9, 1936 to July 8, 1938—28 months at $30—or a total of $840, and averred that it had been served with notice by the mortgagees on April 13, 1936, demanding the rents as mortgagees, the court (McDonald, J.) made absolute plaintiff's rule on the

[1] The judgment should have been for $60, as two months' rent had *accrued* under the lease when the mortgagees made demand on the tenant for the payment of the rents.

8

garnishee and intervening mortgagee to show cause why it should not have judgment, and directed the garnishee to pay to plaintiff the balance of rents in its hands, to the extent necessary to pay its judgment, interest and costs, any overplus remaining after payment of the judgment to be paid to the mortgagee, Anna Meyer. Anna Meyer appealed.

The order will be reversed.

The Supreme Court, speaking through Justice (afterwards Chief Justice) AGNEW, pointed out in *Evans v. Hamrick*, 61 Pa. 19, that an execution attachment differs from a foreign attachment, in that it "cannot be levied of land—that, the fi. fa. must reach—the attachment [execution] is levied only of debts or choses in action ...... When the attachment was laid in the hands of the garnishees they were not debtors to Owen Evans. Had the rent fallen due afterwards, then on the principle of after-accruing funds coming into their hands, the attachment might have held the rent. But before this event happened, the reversion to which the rent was incident passed out of Evans into his assignee in bankruptcy by operation of law. There was, therefore, no debt for the attachment to operate upon."

The Act of June 16, 1836, P. L. 755, relating to executions, provides for the attachment of corporate stock owned by a defendant, debts due the defendant, deposits of money made by him, or of his goods, chattels, etc., in satisfaction of a judgment, (Sections 34, 35, 36, 37 and 38), and directs that it shall be levied "in the manner allowed in the case of a foreign attachment," and that the stock, debts, deposits and other effects "shall remain attached in the hands of such corporation or person in the manner heretofore practised and allowed in the case of foreign attachment." The Act of June 13, 1836, P. L. 568, prescribed the practice as to foreign attachments, and sections 66 and 67 thereof provide as follows with respect to the attachment of land which has been leased for years, to wit:

"Section 66. It shall be lawful for the court, at any time after the return of the attachment, on application by the plaintiff, and affidavit of a just cause of action, to issue a writ to the sheriff, requiring him to collect and recover from the tenant of the premises, all such rent as shall have accrued, at the time of the execution of the writ of attachment, or as may accrue thereafter, until the further order of the court.

"Section 67. The sheriff or other officer shall, by virtue of such writ, proceed from time to time to recover such rents, in like manner and with like powers as are or shall be possessed by a landlord under the laws of this commonwealth, and it shall be his duty forthwith, on the receipt of any moneys arising from the recovery of such rents, to bring the same into court."

If the practice in this respect is applicable, under the Act of June 16, 1836, P. L. 755, supra, to attachments in execution, then, no such order was obtained from the court in this instance; and no rents were paid to or collected under the writ by the sheriff from the tenant and brought into court, as was done in *General Tire Co. v. Tennis,* 21 D. & C. 85, relied on by the court below. Hence we must resort to the general principles applicable to attachments in execution, and to the rights of mortgagees to demand payment of rent to them on default by the mortgagors.

In *Phillips' Est.* (No. 4), 205 Pa. 525, 530, 531, 55 A. 216, our Supreme Court, speaking through Mr. Justice BROWN, said: "The attaching creditors attached only *what still remained to the debtor.* They could get nothing from the accountants [garnishees] by their attachments that did not belong to him when the writ was served. By the service of it they became equitable assignees of what Altamont P. Moses [the debtor] *still had a right to assign.* As to him, the prior assignments ...... were valid, and so they were as against his attaching creditors, *whose rights rose no higher than his* (Italics supplied) : *Pellman v. Hart,* 1 Pa. 263;

*Noble v. Thompson Oil Co.,* 79 Pa. 354; *Hemphill v. Yerkes,* 132 Pa. 545."

In the very late case of *Aarons v. Public Service B. & L. Assn.,* 318 Pa. 113, 117, 178 A. 141, speaking through Mr. Justice LINN, the same court said: "The service of an attachment execution has the effect of an equitable assignment of the thing attached. *It puts the garnishee in the relation to the attaching creditor which he had sustained to his former creditor.* (Italics supplied). He may make the same defense to the attachment by evidence of set-off or of other equities that he might have made if sued by his original creditor." To the same effect, see *Myers v. Baltzell,* 37 Pa. 491; *Fisher v. McFarland,* 110 Pa. Superior Ct. 184, 187, 167 A. 377; *O'Brien v. Radford,* 113 Pa. Superior Ct. 88, 92, 171 A. 296.

It is settled in this State that on default by a mortgagor, who has conveyed in the mortgage the rents, issues and profits of the mortgaged real estate, (*cf. Fisher, for use v. McFarland,* 110 Pa. Superior Ct. 184, 185, 167 A. 377), the mortgagee, on giving notice to the tenant of the mortgaged premises, demanding that future instalments of rent be paid to him, is entitled to the *rents accruing after such notice* as against the mortgagor landlord, the net rents so collected to be applied to the mortgage, interest and principal, until paid in full: *Randal v. Jersey Mtge. Inv. Co.,* 306 Pa. 1, 6, 7, 158 A. 865; *Bulger v. Wilderman & Pleet,* 101 Pa. Superior Ct. 168;[2] and as the rights of an attaching creditor rise no higher than those of his judgment debtor, the attachment is subjected to the superior rights

[2] See also, *Brown v. Aiken,* 329 Pa. 566, 575, 198 A. 441; *Girard Trust Co. v. Dempsey,* 129 Pa. Superior Ct. 471, 474-476, 196 A. 593; *Baltimore Markets v. Real Est. L. T. & T. Co.,* 120 Pa. Superior Ct. 40, 43, 181 A. 850; *Integrity Trust Co. v. St. Rita B. & L. Assn.,* 112 Pa. Superior Ct. 343, 347, 348, 171 A. 283, affirmed 317 Pa. 518, 177 A. 5; *Fisher v. McFarland,* 110 Pa. Superior Ct. 184, 185, 187, 167 A. 377; *Kenwood v. Dordick,* 104 Pa. Superior Ct. 12, 14, 159 A. 84.

of the mortgagee, if, as, and when he asserts them by giving the tenant notice of his demand for payment of the rent accruing after such notice. It has no effect on the rents which the tenant owed as a debt to the judgment debtor when the attachment was served, or which accrued under the lease prior to the assertion by the mortgagee of his superior right to the rents, by virtue of the conveyance in the mortgage; but as to rents accruing after notice and demand, the superior rights of the mortgagee take precedence over the rights of the mortgagor and those standing in his shoes. Hence in this case, the plaintiff, the attaching creditor was entitled to judgment for $60 rent which had accrued and was payable by the garnishee prior to the service of notice and demand by the mortgagee; the appellant is entitled to judgment for the balance of rent due by the garnishee under the lease, to be applied to the payment of her mortgage, interest and principal.

The lower court cases chiefly relied on by the court below, *General Tire Co. v. Tennis,* 21 D. & C. 85, and *Mackay's Est.,* 25 D. & C. 544, are easily distinguishable. In both of those cases the court recognized the binding authority of *Randal v. Jersey Mtge. Inv. Co.,* supra, and *Bulger v. Wilderman & Pleet,* supra; but held them not applicable because the mortgagees in their respective cases had made no demand on the tenant for the rents nor taken any other steps to obtain possession—actual or constructive—of the mortgaged premises; and in the General Tire Company case the rents had been collected by the *sheriff pursuant* to the attachment, under an order of court made as directed in sections 66 and 67 of the Act of June 13, 1836, P. L. 568, supra; and the matter before the court was the distribution of the fund in the hands of the sheriff, which had been raised by him and brought into court under the writ of attachment execution and the order of court. In that case Judge ATLEE, speaking for the court below, said (p. 88): "There always exists the right of the

mortgagee to have the tenant in possession of the mortgaged premises pay to the mortgagee the rent which otherwise the tenant would pay to the landlord mortgagor, but this right does not become complete until the mortgagee makes demand upon the tenant and requires the tenant to pay to the mortgagee the rents which otherwise the tenant would pay to the landlord mortgagor."

In *Mackay's Est.*, supra, the following extracts from Judge KLEIN's opinion, (pp. 545 and 546), state the situation as to the facts and the ground for the court's ruling: "The mortgagee took no steps to take possession of the mortgaged premises and made no demand upon the tenant for the rents. *At the audit he contended for the first time* (Italics supplied) that the rents derived from the mortgaged premises and collected by the administrator, pursuant to the authority granted by this court, must first be applied in payment of taxes on the mortgaged premises and interest and other obligations due under the mortgage ...... The claim of the exceptant comes too late. A mortgagee cannot sit idly by and permit the owner to collect the rents from the mortgaged premises and then complain because they have not been collected for his benefit. *Vigilantibus et non dormientibus, jura subveniunt.* The exceptant has slept on his rights. We must assume that he was satisfied with his security if he took no steps to avail himself of his right against the tenant for rents." The distinction between that case and this one on the facts is plainly evident.

The assignment of error is sustained. The order is reversed and the record is remitted to the court below for further proceedings in accordance with this opinion.