Peoples-Pittsburgh Trust Company, Appellant, *v.* Henshaw et al.

586

Argued May 7, 1940.

Before

KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, RHODES and HIRT, JJ.

James M. Graham, with him Patterson, Crawford, Arensberg & Dunn, for appellant.

Thomas P. Johnson, with him Reed, Smith, Shaw & McClay, for appellee.

Albert C. Hirsch, with him Hirsch, Shumaker, Demmler & Bash, for amicus curiae.

OPINION BY KELLER, P. J., October 4, 1940:

This appeal raises the following legal question: Where the holder of a mortgage which conveyed the mortgaged real estate and all rights, privileges, hereditaments and appurtenances, belonging or appertaining thereto, as security for the payment of a judgment bond, (but which did not contain the usual clause conveying the rents, issues and profits of said real estate), notified the owner—the alienee of the mortgagor—after default, that it took possession of the mortgaged property, (but

did not actually enter and secure possession), and demanded of the tenant in possession of the building, under a lease made *after* the mortgage, that all rents accrued and accruing under said lease be paid to it, but the tenant refused to pay the same to the mortgage holder, will a court of equity, in a suit against the tenant, enjoin the latter from paying such rent to the owner and order it to be paid to the holder of the mortgage?

The court below decided the question in the negative. We agree with that decision and think it is in accord with the principles laid down in *Bulger v. Wilderman & Pleet*[1], 101 Pa. Superior Ct. 168, and *Randal v. Jersey Mortgage Inv. Co.,* 306 Pa. 1, 158 A. 865.

We will consider the matter under two general heads:

1—The right of the mortgagee or holder of the mortgage, to *require* the tenant to pay it the rent after notice, in the circumstances here present.

2—The right to proceed in equity to compel such payment.

(1) In the first place, stress must be laid on the fact that the lease was not made until after the mortgage had been given. The rights of the parties in such a situation are very different from those where the lease precedes the mortgage. The failure of the learned counsel for the *amicus curiae* to recognize this distinction deprived us of much of the help we had expected from his kindly intervention. Many of the decisions greatly relied upon in his brief, and in the brief of appellant, related to cases in which the mortgage was given after the lease, e. g., *Moss v. Gallimore,* 1 Doug. 279, 99 Eng. Reprint 182, 18 Eng. Rul. Cases 403; *Burden v. Thayer,*

---

[1]Authorities cited from foreign jurisdictions, in the above case, and excerpts quoted from them, were not adopted as stating the law of this Commonwealth, but were only illustrative of the points in connection with which they were mentioned. See *Smith's Petition,* 291 Pa. 129, 140, 139 A. 832.

3 Metc. (44 Mass.) 76; *King v. Housatonic R. Co.,* 45 Conn. 226; *Russell v. Allen,* 2 Allen (Mass.) 42. See also, *Youghiogheny-Pittsburgh Coal Co. v. Carlet,* 92 Pa. Superior Ct. 40, where the conveyance was after the lease. The excerpt from 19 Ruling Case Law, p. 315 (Mortgages, sec. 90)—Brief Amicus Curiae, pp. 6, 7—is expressly limited to cases where the premises, at the time of the giving of the mortgage, are under lease for a term of years,—which is not this case.

Where the lease precedes the mortgage and a tenant is in possession under it when the mortgage is given, and the term of the lease has not expired, the mortgage is taken subject to the lease, and the mortgagee cannot bring ejectment against the tenant for *default of the mortgagor,* or action in trespass; and in case of foreclosure[2] of the mortgage for default,—whether by levari facias following judgment in scire facias proceedings on the mortgage (Act of 1705, 1 Sm. L. 57, pp. 59-61; 2 Stat. at Large, Ch. CLII, pp. 246-9) or by fieri facias, or fieri facias and vend. ex., on the judgment entered on the bond accompanying it (*Keene Home v. Startzell,* 235 Pa. 110, 83 A. 584)—the property is sold subject to the lease. A conveyance of the property by mortgage, in such case, as security for the payment of the mortgage debt, carries with it, as an incident of the reversion or remainder, the right to the rents accruing under the prior lease, to be exercised in *modern practice* (*Guthrie v. Kahle,* 46 Pa. 331, 333; *Bulger v. Wilderman & Pleet,* supra, p. 172) only in case of default by the mortgagor or his alienee, the owner of the real estate. Hence, in such case, on notice to the tenant demanding that he pay the rent to the mortgagee, the statute of 4 Anne, ch. 16, secs. 9 and 10, which is in force in Pennsylvania (Roberts' Digest of British Statutes in force in this

---

[2] We use this term here loosely, as meaning the method of enforcing payment of a debt secured by mortgage.

Commonwealth, pp. 45 and 46; 3 Binney, Appendix, p. 625), applies and provides that the conveyance "of any manors or rents, or of the reversion or remainder of any messuages or lands, shall be good and effectual, to all intents and purposes, without any attornment[3] of the tenants of any such manors or of the land out of which such rent shall be issuing, or . . . . . . as if their attornment had been had and made." Accordingly, it is the duty of such tenant—that is, one holding under a lease made prior to the mortgage—to pay over to the mortgagee all rents remaining in his hands or accruing after the receipt of such notice from the mortgagee; and the latter may distrain or sue the tenant in assumpsit for such rent. These rights and incidents do not attach where the mortgage precedes the lease.

The grafting of equitable principles upon, or their application to, the legal concept of a mortgage, as the *conveyance* of land as *security* for the payment of money or the performance of some collateral contract, has produced some anomalies or departures from logical consequences. But, in the words of Mr. Justice HOLMES[4] "The life of the law has not been logic; it has been ex-

---

[3]While the term, 'attorn', 'attornment', or 'equivalent to attornment' is used in our decision—See *Randal v. Jersey Mortgage Inv. Co.*, supra, pp. 5 and 6; *Bulger v. Wilderman & Pleet*, supra, pp. 179, 180—it is not used in the technical sense of an attornment at common law. As used in our law, it is merely the assent of the tenant to the landlord's alienation, and the acceptance of the alienee as his landlord; the lease is untouched in other respects: *Tilford v. Fleming*, 64 Pa. 300; *Brown v. Aiken*, 329 Pa. 566, 574-576, 198 A. 441; *Girard Trust Co., Trustee v. Dempsey*, 129 Pa. Superior Ct. 471, 474-476, 196 A. 593. Such *assent* is not necessary where the lease precedes the mortgage. The statute of 4 Anne supplies it. It *is* necessary where the mortgage precedes the lease in order to constitute privity between the tenant and the mortgagee, such as would support a distraint or action by the latter against the former.

[4]The Common Law, p. 1.

perience." Perfectly symmetrical fruit has not always resulted from the graft.

· The interest of a mortgagor in real estate, following the giving of a mortgage in this Commonwealth, is difficult to state in a few words. The term, 'Equity of redemption,' is sometimes applied, but, as originally used, it is not strictly applicable in this State. When once the property has been sold under scire facias proceedings on the mortgage, or by execution on the bond, the mortgagor's interest is gone forever. Equitable principles were applied in our law before the real estate was sold in execution. Under our modern practice, the mortgagor, undoubtedly, remains the owner of everything not conveyed away by the mortgage. He retains the possession, if not in default, and can grant it by way of lease to a tenant, who covenants to pay him the rent. The lease, of course, is subject to the mortgage, and on foreclosure for default it is extinguished. Likewise, on default in the terms of the mortgage, the mortgagee is entitled to possession of the premises *if he can enter peaceably;* he can bring ejectment against the mortgagor if the latter is in possession, or against the tenant if he holds under a lease subsequent to the mortgage. If the mortgagor refuses to deliver up possession, the mortgagee must bring ejectment (*Erny v. Sauer,* 234 Pa. 330, 334, 83 A. 205) or foreclose. If the property is in the possession of a tenant, under lease, and the tenant complies [5] with the mortgagee's demand for payment of the rent to him, it is a good defense against

---

[5] In the following cases the tenant complied with the mortgagee's request for payment of rent to him: *Bulger v. Wilderman & Pleet,* supra; *Real Estate Land T. & T. Co. v. Homer B. & L. Assn.,* 138 Pa. Superior Ct. 563, 565, 10 A. 2d 786, 788; *McNicholas' App.,* 137 Pa. Superior Ct. 415, 416, 9 A. 2d 200. The point is referred to in *Morris v. Connellan,* 25 D. & C. 459, 462, in an excellent opinion by FRONEFIELD, P. J. In *Miles v. Abe Kalsky,* 13 D. & C. 579, the parties agreed to the rents being held or impounded.

the demand of the mortgagor landlord, or his assignee (*Bulger v. Wilderman & Pleet*, 101 Pa. Superior Ct. 168), and such payment being equivalent to an attornment—see note 1—thereafter the mortgagee can enforce the lease by distraint or action for the rent, in the right, however, of the mortgagor; for the mortgagee in possession does not receive the rents in his own absolute right, but as a quasi-trustee for the mortgagor or owner to be applied to the taxes and on account of the mortgage, and is liable to account to him for the same (*Integrity Trust Co. v. St. Rita B. & L. Assn.*, 112 Pa. Superior Ct. 343, 171 A. 283, affirmed 317 Pa. 518, 177 A. 5). The mortgagee in possession is not the *owner* of the property; he is not personally liable for taxes: *Provident Trust Co. v. Judicial B. & L. Assn.*, 112 Pa. Superior Ct. 352, 171 A. 287. If the tenant is unwilling to pay the rent on demand by a mortgagee, on default in the mortgage, in the absence of a direction from the mortgagor to do so, the mortgagee cannot proceed against him by distraint or action. Appellant concedes this. The law on this point was well expressed by the Supreme Court of the United States in *Teal v. Walker*, 111 U. S. 242, 248. After referring to the legal principle that where the lease precedes the mortgage, the mortgagee is entitled to demand the rents and profits of the mortgaged premises upon giving notice of his mortgage to a tenant in possession, as above stated, the opinion continued: "Where, however, the lease is subsequent to the mortgage, the rule is well settled in this country, that, *as no reversion vests in the mortgagee,* and no privity of estate or contract is created between him and the lessee, he cannot proceed, either by distress or action, for the recovery of the rent" (Italics supplied). This quotation from the opinion was cited with approval by Mr. Justice MAXEY, speaking for our Supreme Court, in *Brown v. Aiken*, 329 Pa. 566, 576, 198 A. 441. In such case, the mortgagee's remedy is to assert his *su-*

*perior* rights as mortgagee and bring ejectment, or foreclose, and thus extinguish the lease (*Brown v. Aiken, supra*). The foregoing quotation, approved by our Supreme Court, is a complete answer to appellant's contention that a conveyance to the mortgagee of all rights, privileges, hereditaments and appurtenances, belonging or appertaining to the real estate—even the reversions and remainders—constituted without more a conveyance of the rents *accruing under a subsequent lease;* for as pointed out therein, differing from the case where the mortgagor leases the property and then mortgages it, "No reversion vests in the mortgagee"; while a clause in the mortgage conveying the rents, issues and profits, can and must be applied to the rents, issues and profits arising from the subsequent use or leasing of the property or the interest of the mortgagor therein, remaining after the execution and delivery of the mortgage. See *Randal v. Jersey Mortgage Inv. Co.,* 306 Pa. 1, 6, 158 A. 865. But even in that case, Mr. Justice SIMPSON, speaking for the Supreme Court, did not say that the holder of a prior mortgage simply upon giving notice to the tenant to pay the rent to him could *require* the *tenant* to do so and bring an action or suit against him for its recovery, but only, that after such notice, the *owner* of the mortgaged property "will be held liable to account to the mortgagee or his assignee for the rent thus received, less any payments made on account of the property, which inured to the benefit of the one who should ultimately be found entitled to the rent so collected." (p. 6).

In order to acquire the right to *demand* payment of the rent to the mortgagee there must be an entry and taking of possession by the mortgagee. Lacking such entry and taking of possession he must proceed by ejectment or "foreclosure" as aforesaid.

If the mortgagor goes into bankruptcy (*Bindseil v. Liberty Trust Co.,* 248 Fed. 112, C. C. A. 3d—WOOLLEY,

J.), or an attachment execution is levied upon the rents in the hands of the tenant, (*Miners Savings Bank v. Thomas,* 140 Pa. Superior Ct. 5, 12 A. 2d 810), and the rent, in consequence, comes into the custody or control of the law, the priority of the mortgagee will be recognized and the rents distributed to the mortgagee in preference to the general creditors or attaching creditors, as the case may be, at least where the mortgage conveys the rents, issues and profits accruing under subsequent leases[6] and the mortgagee gives notice of his demand for their payment.

The foregoing views are in general accord with the recent text book authorities—having regard to the differences between the practice in this Commonwealth and in jurisdictions which proceed in equity for a strict foreclosure of the mortgagor's equity of redemption. See 2 Jones on Mortgages, sec. 982, (8th Ed. 1928); Wiltsie, Mortgage Foreclosure, Including Law of Mortgages, sec. 560 (5th Ed. 1939).

(2) Nor do we think that the mortgagee or his assignee, by bringing his suit in equity may compel the tenant to do what the appellant frankly admits it cannot require by an action at law. While this appellant in bringing its suit named the owner of the mortgaged property—the alienee of the mortgagor—as a defendant with the tenant, the bill was not served on her and no appearance was entered for her, so the suit is resolved into one against the tenant alone.

In the early days of the Commonwealth, whether as a colony or a state, no provision was made for courts of

---

[6]Such a clause was present in the mortgages in the following cases: *Bulger v. Wilderman & Pleet,* 101 Pa. Superior Ct. 168, 170; *Randal v. Jersey Mortgage Inv. Co.,* 306 Pa. 1, 4, 158 A. 865; *Miles v. Abe Kolsky & Co.,* 13 D. & C. 579, 581 [FINLETTER, P. J.] [Case does not show whether lease was before or after mortgage]; *Morris v. Connellan,* 25 D. & C. 459, 461 [FRONEFIELD, P. J.] [Ejectment]; *Miners Savings Bank v. Thomas,* 140 Pa. Superior Ct. 5, 6, 12 A. 2d 810.

equity; but our judges, with a wisdom far ahead of the times, administered equitable principles, which the settlers brought with them as a part of our common law, (*McMunn v. Carothers*, 4 Clark 354, 355—Lowrie, J., 8 Standard Pennsylvania Practice—Equity Practice, §2, p. 14), under common law forms, as a substitute for formal bill and equity process. And as early as 1705, (Act of January 12, 1705-6, 1 Sm. L. 57, pp. 59-61; 2 Stat. at Large, ch. CLII, pp. 246-9), provision was made for enforcing the collection of a mortgage by scire facias and levari facias, which secured to the mortgagor before a sale, advantages comparable to those which a court of chancery gave him by creating the equity of redemption.

Until 1836 there were no separate courts of equity in this Commonwealth. The Act of June 16, 1836, P. L. 784, sec. 13, granted to the Supreme Court and the several courts of common pleas the jurisdiction and powers of a court of chancery so far as related to (1) the perpetuation of testimony; (2) the obtaining of evidence from places outside the state; (3) the care of the persons and estates of those who are non compos mentis; (4) the appointment of trustees, their control, removal and discharge, and the settlement of their accounts; (5) the supervision and control of all corporations, other than those of a municipal character, and unincorporated societies or associations, and partnerships; (6) the care of trust monies and property, etc., and (7) in such other cases as the said courts had theretofore possessed such jurisdiction and powers, under the constitution and laws of this Commonwealth. And it further provided that the Supreme Court when "sitting in bank", in the City of Philadelphia and the courts of common pleas for said city and county—since extended throughout the Commonwealth—should in addition have the power and jurisdiction of courts of chancery, so far as related to—(1) the supervision and

control of partnerships and corporations other than municipal corporations (see *McDougall v. Huntingdon & B. T. R. & C. Co.*, 294 Pa. 108, 115, 143 A. 574) ; (2) the care of trust monies and property, etc.; (3) the discovery of facts material to the just determination of issues and questions depending in the said courts; (4) the determination of rights to property or money claimed by two or more persons, in the hands or possession of a person claiming no right of property therein; (5) the prevention or restraint of the commission or continuance of acts contrary to law, and prejudicial to the interests of the community, or the rights of individuals; (6) the affording specific relief, when a recovery in damages would be an inadequate remedy.

No chancery jurisdiction was given the courts with respect to mortgages, their collection, enforcement, equity of redemption, and foreclosure, probably because the statutory remedy at law by scire facias, which had been administered with due regard to equitable principles had proved entirely satisfactory.

While the chancery jurisdiction of our courts of common pleas has been enlarged from time to time, they have not been made courts of *general jurisdiction in equity,* and their chancery powers and jurisdiction have not been extended to mortgages given by individuals. The matter is well summarized in 13 Standard Pennsylvania Practice, chap. 68—Enforcement of Real Property Mortgages, §4, Available Remedies, as follows: "Because of the fact that no courts of general equity jurisdiction have existed in Pennsylvania, the equitable remedy of foreclosure has not been available except in a limited degree and only to the extent provided by statute [See, infra §§198, 199, 200, 201]."

Equity jurisdiction with respect to *corporate* mortgages was conferred on the Supreme Court by the Act of April 11, 1862, P. L. 477 ; and on the courts of common pleas with respect to certain corporate mortgages by

the Act of March 23, 1877, P. L. 32, amended by Act of May 5, 1931, P. L. 84, No. 60; and the Act of May 5, 1876, P. L. 123, confers equity jurisdiction on the courts of common pleas to enforce rights under the mortgages of the property, etc., of a railroad, canal or navigation corporation. See also Acts of May 31, 1887, P. L. 278; June 20, 1911, P. L. 1092. But the special grant of chancery powers with respect to the enforcement and foreclosure of certain classes of *corporate* mortgages emphasizes the fact that the law making body has not seen fit to extend and apply them to mortgages given by individuals as well. The complications attending the enforcement and foreclosure of certain corporate mortgages, which are not usually present with respect to mortgages given by individuals, furnish the basis for the distinction.

It was held by our Supreme Court in *Talbot's Appeal*, 2 Walker 67, 2 Chester Co. 413, that the holder of a mortgage, who foreclosed and bought in the real estate at the sale, could not, by a bill in equity, require the alienee of the mortgagor, who had remained in possession of the property, to account to him for the rents and profits of the real estate during the period between the date when the condition of the mortgage was broken and the plaintiff recovered possession. That case involved real estate in the City of Washington, D. C., where, instead of a technical mortgage, a *trust deed* is used as security for a loan on real estate, but our Supreme Court held that it was a mortgage within the contemplation of our law, and said: "When the mortgagor is suffered to remain in possession, he remains there as owner, and is not accountable for the rents and profits. The appellee who acquired the whole title of the mortgagor occupies the same high grounds ...... He was not a trespasser in entering on and occupying the premises prior to a sale and conveyance by the trustee. His possession is lawful."

The appellant admits that it cannot recover this rent from the defendant—which refuses to comply with appellant's demand that the rent be paid to it, although it had not been able to secure possession of the premises —by distraint or action at law. We are of opinion that no chancery jurisdiction has been conferred on the lower court to restrain the defendant from paying the rent to the landlord to whom it lawfully agreed to pay it, and to order its payment instead to the plaintiff mortgage holder.

The plaintiff's remedy is (1) by action in ejectment or (2) by scire facias proceedings on the mortgage or (3) by issuing execution on the judgment bond accompanying the mortgage.

Decree affirmed at the costs of the appellant.